UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LILLIAM M. RIVERA                                      CIVIL ACTION

VERSUS                                                 NO. 04-3327

STATE OF LOUISIANA                                     SECTION: "C" (5)

**ORDER AND REASONS**

This case is before the Court upon the consent of the parties pursuant to 28 U.S.C. §636(c). (Rec. doc. 17). Presently before the Court is defendant's motion to dismiss, plaintiff's opposition thereto, and the parties' various reply memoranda. (Rec. docs. 11, 18, 21, 27, 36). For the following reasons, defendant's motion is denied in part and granted in part.

**I.   Facts and Procedural Background**

Lilliam M. Rivera ("plaintiff") was employed as a Correctional Officer at the Bridge City Correctional Center for Youth ("Center") by the State of Louisiana's Department of Public Safety and Corrections. (Rec. doc. 1, p. 2). Plaintiff began working at the Center in February of 2002. (Rec. doc. 18, p. 1).

Plaintiff claims she was sexually harassed by Lt. Kenneth Hill

on September 12, 2002 while performing her duties at the Center. (Rec. doc. 1, p. 2; rec. doc. 18, p. 2). On September 16, 2002, plaintiff: (1) reported the alleged sexual harassment to Ltc. Ned Tolliver, Chief of Security at the Center; (2) filled out a grievance form; and (3) filed an accident report. (Rec. doc. 18, p. 2 and ex. A). Plaintiff also claims that other Center employees harassed her and created a hostile work environment for her based on her national origin (Hispanic). (Id. at p. 2-3). Plaintiff further claims that she was subjected to retaliatory actions after complaining about the alleged harassment, including being transferred from a position with limited inmate contact to a position at Kennedy Hall Dormitory. (Id. at p. 3). Shortly after plaintiff's transfer to the dormitories, she was beaten by one of the inmates who had allegedly been instructed to assault her in retaliation for her complaints of harassment and discrimination. (Id.). The combined effect of these activities led to plaintiff's resignation from the Center on January 23, 2003. (Id.).

Before resigning, plaintiff's counsel sent a letter to John Anderson, Warden at the Center, on October 30, 2002. (Rec. doc. 1, p. 4). This letter: (1) informed Anderson of plaintiff's alleged sexual harassment by Hill, (2) informed Anderson of alleged subsequent retaliatory actions and the hostile work environment to which plaintiff was subjected by Center employees, and (3) requested that plaintiff be transferred from her position at the Kennedy Hall Dormitory to her previous position at the Center.

2

(Rec. doc. 18, ex. B).  Defendant did not respond to plaintiff's requests.  (Id. at p. 2).   Also before resigning, on or about November 15, 2002, plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") regarding her alleged sexual harassment.  (Rec. doc. 1, pp. 4-5). Plaintiff ultimately resigned approximately two months later, on January 23, 2003.  (Id. at p. 3).  Plaintiff does not allege that any acts of harassment or discrimination took place after the latter date.

On April 23, 2003, plaintiff filed a formal charge of discrimination with the EEOC, alleging she had been subjected to sexual harassment, a hostile work environment, and discrimination by the defendant based on her national origin (Hispanic) and sex (female).  (Rec. doc. 18, ex. C).  The EEOC sent a letter to both parties on April 30, 2004, inviting them to submit the matter to conciliation/arbitration.  The parties agreed to submit the matter to conciliation but those efforts proved to be unsuccessful.  On June 18, 2004 the EEOC sent a notice of conciliation failure to both parties.

Plaintiff subsequently requested that the EEOC issue a Right-to-Sue Letter to her on August 10, 2004, which the EEOC later did on September 15, 2004.   Plaintiff filed the above-captioned complaint against the State of Louisiana, Department of Public Safety and Corrections, Office of Youth Development, on December 6, 2004. (Rec. doc. 1).  Plaintiff asserted claims pursuant to Title

VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e et seq.; Louisiana Employment Discrimination Law, LSA-R.S. §§23:301 et seq. and 23:303(D); and Article 2315 of the Louisiana Civil Code. (Id.) (Rec. doc. 1).

On June 2, 2005, defendant filed the motion that is presently before the Court, arguing that the Court lacks subject matter jurisdiction over plaintiff's Title VII claims because they have not been administratively exhausted as required by Title VII. (Rec. doc. 11). Defendant also argues that plaintiff's state law claims have prescribed and that the complaint therefore fails to state a claim upon which relief can be granted. (Id. at p. 2).

Plaintiff filed an opposition to defendant's motion to dismiss on August 9, 2005 to which defendant filed a reply on August 17, 2005. (Rec. docs. 18, 21). At a hearing on defendant's motion to dismiss on August 17, 2005, the Court directed the parties to file supplemental memoranda in support of their respective positions. (Rec. doc. 22, p. 2). Those supplemental briefs are now before the Court. (Rec. docs. 27, 36).

**II. Legal Standards and Discussion**

**A.   Dismissal Pursuant to Rule 12(b)(1)**

A motion filed under Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge a district court's subject matter jurisdiction to hear a case. A district court may find lack of subject matter jurisdiction in any one of three ways: (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub. nom, 536 U.S. 960, 122 S.Ct. 2665 (2002)(citing Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996)).  The party asserting jurisdiction bears the burden of proof. Id. Ultimately, a lawsuit should be dismissed for lack of subject matter jurisdiction only if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief.  Id.

**B.   Dismissal of Plaintiff's Title VII Claims Pursuant to Rule 12(b)(1)**

Pursuant to FRCP 12(b)(1), defendant alleges that the Court lacks subject matter jurisdiction over plaintiff's Title VII claims because they have not been administratively exhausted as required by Title VII.  Defendant further argues that if the Court finds that plaintiff has administratively exhausted her Title VII claims, her federal cause of action should be limited to those allegations listed in her EEOC charge of discrimination.

As a prerequisite to filing a Title VII claim in federal court, the complainant must: (1) timely file suit as required by Title VII and (2) have first exhausted her administrative remedies. Tolbert v. U.S., 916 F.2d 245, 247-48 (5th Cir. 1990)(per curiam); Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698,

711 (5th Cir. 1994).  Failure to meet both requirements deprives the Court of subject matter jurisdiction over the case.  <u>Tolbert</u>, 916 F.2d at 247-48.

A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory employment activity occurred.  42 U.S.C. § 2000e-5(e)(1).  However, in "deferral states", this period is extended to 300 days if the complainant has instituted a complaint with a state or local agency with authority to grant or seek relief with respect to such practices.  Louisiana is a deferral state; therefore, the 300 day filing period applies.  LSA-R.S. §23:303; <u>Mayes v. Office Depot, Inc.</u>, 292 F.Supp.2d 878, 888 (W.D. La. 2003).

The time to file a claim for discrimination with the EEOC "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred."  <u>Id.</u> (quoting <u>Huckabay v. Moore</u>, 142 F.3d 233, 240 (5th Cir. 1998)).  Once the clock begins to run, the complainant has 300 days to file a charge of discrimination with the EEOC.  <u>Id.</u> (citing <u>Nat'l Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114, 122 S.Ct. 2061 (2002)); <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 352 (5th Cir. 2001)).  The complainant then has 90 days from the issuance of a Right-to-Sue Letter by the EEOC to file suit.  <u>Mayer v. Southeast Battery</u>, 2001 WL 1352321 at *1 (E.D. La. Nov. 1, 2001).

In the present case, plaintiff asserts that the last acts of

discrimination against her took place on January 23, 2003, the day she resigned from the Center.  Plaintiff had 300 days from the latter date within which to file a charge of discrimination with the EEOC. Plaintiff filed her charge with the EEOC on April 23, 2003, within the 300 day requirement.  Plaintiff received a Right-to-Sue Letter from the EEOC on September 15, 2004.  She subsequently filed her Title VII complaint in federal court on December 6, 2004, within the 90-day time period.  Contrary to defendant's allegations, plaintiff timely exhausted her administrative remedies as required by Title VII before filing suit in federal court.

Defendant further asserts that plaintiff's Title VII claims should be limited to those listed in her EEOC charge of discrimination.  The scope of a Title VII complaint is limited to the "'allegations contained in the [EEOC] charge and growing out of such allegation **during the pendency of the case before the Commission**.'" Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 711 (5th Cir. 1994)(quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970))(emphasis in original)).  Failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit.  Thomas v. Texas Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000)(citing Young v. City of Houston,

906 F.2d 177, 179 (5th Cir. 1990)).

Several district courts have recently applied these principles to disallow a variety of claims not raised in an EEOC charge of discrimination. See, e.g., Harvill v. Westward Communications, LLC, 311 F.Supp.2d 573, 585 (E.D. Tex. 2004), aff'd, 433 F.3d 428 (5th Cir. 2005)(refusing to allow a constructive discharge claim that was not asserted in the EEOC charge); Stewart v. May Dep't Stores, 294 F.Supp.2d 841, 848-49 (M.D. La. 2003)(precluding the plaintiff, "by the four corners of her document", from asserting a racial hostile work environment claim because her EEOC charge did not have the appropriate box checked); Seppy v. City of Irving, 2002 WL 1592609 at *4 (N.D. Tex. July 18, 2002)(finding plaintiff's race, gender, retaliation, and hostile work environment claims were barred because she checked only the national origin and age discrimination boxes on the EEOC charge form).

Plaintiff seeks Title VII relief from the Court stemming from allegations of gender discrimination, sexual harassment, quid pro quo sexual harassment, national origin discrimination, retaliation, racial discrimination, and hostile work environment. Plaintiff's EEOC charge form contains checked-off boxes for discrimination based only on "sex", "national origin", and "retaliation". Although plaintiff did not check-off the box for discrimination based on "race", she specifically alleged in the text of the charge that she had been called various racially derogatory names and had "... complained to Captain Johnny Thornton about the racial

harassment ..." (Rec. doc. 18, ex. C). That was sufficient for administrative exhaustion purposes. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). Because all of plaintiff's Title VII claims which were pled in this Court stem from the allegations contained in her EEOC charge, the Court has subject matter jurisdiction over plaintiff's Title VII claims. Accordingly, defendant's motion to dismiss, insofar as it sought the dismissal of plaintiff's Title VII claims, is hereby denied.

**C.   Dismissal Pursuant to Rule 12(b)(6)**

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); American Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991). The Court must resolve all doubts as to the sufficiency of the claim in plaintiff's favor. Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 387 (5th Cir. 2001). Dismissal is warranted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. Id.; Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir. 1995)(quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994)).

**D.   Dismissal of Plaintiff's State Law Claims Pursuant to Rule 12(b)(6)**

Pursuant to FRCP 12(b)(6), defendant argues that plaintiff's

state law claims have prescribed and that her complaint consequently fails to state a claim upon which relief can be granted.

The prescriptive period for suits brought pursuant to Louisiana employment discrimination law is found at LSA-R.S. §23:303(D), as follows:

> [a]ny cause of action provided in this Chapter shall be subject to a prescriptive period of one year.  However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. **No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.** (emphasis added).

In the present case, plaintiff claims that the last acts of discrimination against her occurred on January 23, 2003, the day she resigned from the Center.  Plaintiff's one-year prescriptive period began to run on that date.  Plaintiff filed a charge of discrimination with the EEOC three months later, on April 23, 2003. In accordance with Louisiana Civil Code Article 3472, plaintiff's contact with the EEOC suspended the running of the prescriptive period. Because R.S. §23:303(D) dictates that no suspension shall last longer than six months, prescription resumed running six month later, on October 23, 2003.  Defendant argues that plaintiff's state law claim prescribed approximately nine months thereafter, on July 23, 2004, eighteen months after the last alleged acts of discrimination.  Plaintiff filed her complaint herein on December

10

6, 2004. (Rec. doc. 1, p. 1). Defendant argues that because plaintiff's complaint was filed more than four months after her state law claims had prescribed, that those claims should be dismissed. (Rec. doc. 21, p. 1-2).

In opposing defendant's motion, plaintiff argues her state law claims have not prescribed because certain exceptions to the running of prescription apply. Plaintiff first argues that prescription was "interrupted" on April 30, 2004 when the EEOC submitted the matter to conciliation pursuant to the parties' agreement. (Rec. doc. 18, pp. 4-6). Plaintiff relies on LSA-C.C. Art. 3105(B), which states:

> [p]rescription is interrupted as to any matter submitted to arbitration from the date of the submission and shall continue until the submission and power given to the arbitrators are put at an end by one of the causes in Article 3132, unless suit has been filed, in which case the provisions of Articles 3462 and 3463 shall apply.

When prescription is "interrupted", it commences to run anew from the last date of the interruption. LSA-C.C. Art. 3466. In this case, plaintiff equates conciliation with arbitration and argues that the arbitrator's power ended when the EEOC issued its Notice of Conciliation Failure to the parties on June 18, 2004. Plaintiff asserts that prescription began to run anew on June 18, 2004. Because plaintiff's lawsuit were filed on December 6, 2004, less than six months after the alleged new prescriptive period started, plaintiff argues that her claims were timely filed. (Rec. doc. 18, p. 6).

Plaintiff, however, has failed to provide legal support for the notion that conciliation should be treated as the legal equivalent to arbitration.  In administratively handling employment discrimination claims, the EEOC is authorized to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. §2000e-5(b). Administrative claims filed with the EEOC, however, do not interrupt prescription on state law claims. Drury v. U.S. Army Corps of Engineers, 359 F.3d 366, 368 (5th Cir. 2004)(citing Taylor v. Bunge Corp., 775 F.2d 617, 618-19 (5th Cir. 1985)); Fussell v. Bellsouth Communications, Inc., 1998 WL 12229 at *2 (E.D. La. Jan. 8, 1998)("[t]he Fifth Circuit has clearly stated that the filing of an EEOC charge does not toll, interrupt or suspend prescription with regard to a plaintiff's state law claims."); Roth v. N.J. Malin & Assoc., 1998 WL 898367 at *5 (E.D. La. Dec. 21, 1998) ("[t]he case law . . . has consistently held that the filing of an EEOC charge does not toll, interrupt, or suspend prescription with regard to a plaintiff's state law claims.")(internal quotations omitted); Brouillette v. Transamerican Refining Corp., 1995 WL 683869 at *4 (E.D. La. Nov. 11, 1995)("[p]laintiff's federal and state law claims are not embodied in the same legislative scheme ... Consequently, plaintiff's filing of administrative proceedings did not operate to toll or suspend the prescriptive period on plaintiff's state law claims.")).  In light of the foregoing authorities, prescription was not interrupted in this case when the

parties agreed to submit the matter to conciliation before the EEOC.

Plaintiff also claims reliance on the doctrine of equitable tolling, or <u>contra non valentem agere nulla currit praescriptio</u> ("prescription does not run against a party who is unable to act"), as an exception to the running of prescription in this case. (Rec. doc. 27, p. 5). Louisiana courts will invoke the doctrine of equitable tolling in "exceptional circumstances" and construe its applicability strictly. <u>Tiger Bend, L.L.C. v. Temple-Inland, Inc.</u>, 56 F.Supp.2d 686, 692 (M.D. La. 1999)(citing LSA-C.C. Art. 3467, comment "d"). In this case, plaintiff claims that due to circumstances beyond her control, she was unable to proceed with litigation because defendant did not sign the Proposed Conciliation Agreement that was circulated in connection with the EEOC's attempts to resolve the matter. Plaintiff also was claims that she unable to proceed in federal court because the EEOC had not yet issued her a Right-to-Sue letter. However, as in <u>Brouillette</u>, nothing prevented plaintiff from filing her action in state court and obtaining a stay while pursuing her Title VII administrative remedies. <u>Brouillette</u>, 1995 WL 683869 at *5. Because this was an available course of action that could have preserved the running of prescription on plaintiff's state law claims, plaintiff was not incapable of acting. Equitable tolling does not apply here.

Plaintiff further discusses acknowledgment as an exception to the running of prescription. (Rec. doc. 27, p. 5-6).

Acknowledgment is codified in Louisiana Civil Code Article 3464 which authorizes the interruption of prescription "when one acknowledges the right of the person against whom he had commenced to prescribe." Plaintiff claims that the defendant gave her the impression that the conciliation ended in a successful resolution of the matter. By subsequently failing to sign the Proposed Conciliation Agreement, plaintiff claims that the defendant lulled her into believing that it would not contest liability. However, the Proposed Conciliation Agreement concerned only the Title VII claims raised by plaintiff. It did not include claims arising under state law. The existence of the unsigned conciliation agreement on plaintiff's Title VII claims does not amount to an acknowledgment of her state law claims for purposes of suspending prescription.

In a final attempt to avoid the effect of prescription on her state law claims, plaintiff invokes equitable estoppel. (Id., pp. 6-8). Equitable estoppel may be appropriate where there is: (1) a representation by conduct or work, (2) justifiable reliance thereon, and (3) a change of position to one's detriment because of the reliance. Holmes v. Jefferson Pilot Financial Insurance Co., 907 So.2d 185, 191 (La. App. 2d Cir. 2005)(citing Case v. Louisiana Medical Mutual Insurance Co., 624 So.2d 1285 (La. App. 3d Cir. 1993)).

Plaintiff claims that she relied on defendant's participation in the conciliation process to her detriment, that had the

14

defendant not participated in the conciliation process, plaintiff would have immediately filed suit in state court. Defendant's willingness to participate in conciliation does not guarantee a resolution of the matter. Plaintiff was not reasonably justified in relying on the defendant's participation in the conciliation process as an indicator that the conciliation would successfully resolve the matter and obviate the need to file suit. Further, no action taken by the defendant prevented plaintiff from filing suit in state court and asking for a stay pending the exhaustion of administrative remedies. The doctrine of equitable estoppel does not apply in this case.

### III. Conclusion

For the forgoing reasons, defendant's motion to dismiss is denied with respect to plaintiff's Title VII claims but is granted with respect to plaintiff's state law claims.

New Orleans, Louisiana, this ___31st___ day of March, 2006.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE